[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12838
Non-Argument Calendar

_____

D.C. Docket No. 9:11-cr-80106-KAM-25

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HAL MARK KREITMAN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 20, 2019)

Before WILLIAM PRYOR, MARTIN, and GRANT, Circuit Judges.

PER CURIAM:

Hal Kreitman appeals the district court's sentence of 84 months of imprisonment and two years of supervised release. He also appeals the court's order to pay $795,945.51 in restitution. After careful consideration, we affirm his sentence and vacate and remand for reconsideration his restitution order.

## I.

The facts of this case are set out in this Court's earlier decision addressing the direct appeal brought by Kreitman and his co-defendants. See United States v. Ramirez, 724 F. App'x 704 (11th Cir. 2018) (unpublished). We will briefly recount them here. Kreitman was convicted of mail fraud, conspiracy to commit mail fraud, money laundering, and conspiracy to commit money laundering for participating in a scheme that defrauded insurance companies. Id. at 709–10. The scheme was as elaborate as it was criminal. The conspirators recruited people to stage car accidents and seek "treatment" at one of several clinics operated by the conspirators. Id. at 709. At the clinic, a conspirator chiropractor, like Kreitman, would prescribe dozens of fake therapy sessions for the "injured" person, bill insurance companies for the cost, and pocket the money. Id. at 709–10.

For his role in this scheme, Kreitman was sentenced to 96-months imprisonment and 2 years of supervised release, and ordered to pay more than $1.5 million in restitution and an assessment of $2,500. Id. at 710. On appeal, this Court vacated his sentence and restitution order because the district court

improperly held him accountable "for all of the loss that was generated during the course of the conspiracy" as opposed to "all reasonably foreseeable" losses. Id. at 718–19 (quotation marks omitted). In addition, the district court failed to "make individualized findings on the scope of criminal activity undertaken by Mr. Kreitman." Id. at 719. This Court remanded Kreitman's case for resentencing. Id. at 720.

On remand, the district court reevaluated the evidence and found that the actual loss was $795,945.51 and that ten or more victims were involved. The court also declined to apply a two-level special skills enhancement because Kreitman did not use any special skills in service of the money laundering offense. As a result, the district court calculated Kreitman's new guideline range as 78 to 97 months, which the court characterized as "an appropriate range . . . to work with" and "sufficient but not greater than necessary to comply with the requirements of Section 3553." Before imposing a sentence, the district court heard arguments from counsel, who urged the court to vary downwards on account of Kreitman's exemplary behavior in prison. While in prison, Kreitman taught multiple GED courses and completed more than 900 hours of coursework in preparation for reentry.

The court imposed an 84-month sentence followed by two years of supervised release. The court also ordered Kreitman to pay $795,945.51 in

restitution.  The court explained that it arrived at its sentence after considering "the statements of the parties, the information contained in the presentence investigation report, and the advisory guideline range, as well as the statutory factors set forth in 18 U.S.C. [§] 3553."

Kreitman timely appealed.

## II.

"We review a district court's interpretation and application of the Sentencing Guidelines de novo but accept the court's factual findings unless they are clearly erroneous."  United States v. Ford, 784 F.3d 1386, 1396 (11th Cir. 2015).  We likewise review de novo "the legality of an order of restitution," and we review the factual findings undergirding the order for clear error.  See United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007).  We review the procedural reasonableness of a sentence under an abuse-of-discretion standard.  United States v. Ellisor, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008).  A district court abuses its discretion if it follows improper procedures in setting a sentence.  Id.

## III.

Kreitman first argues the district court erred in calculating the guideline range by relying on unreliable government calculations of claims, failing to identify and exclude insurance claims involving legitimate patient treatment, and speculating that more than ten victim-entities were involved.  We disagree.

4

The Sentencing Guidelines impose a 14-level enhancement if the actual loss attributable to the defendant is more than $550,000 and less than or equal to $1.5 million. USSG § 2B1.1(b)(1)(H). Kreitman argues the district court overcalculated the loss amount and suggests that he should have received a lower-level enhancement. The problem with his argument is this: counsel for Kreitman conceded at the sentencing hearing that even if the billings were off, the errors were "not going to be anywhere near getting [Kreitman] down to 550"—or $550,000. True, Kreitman asked the district court to calculate a loss amount no greater than 65% of $795,000, or $516,750, to account for Kreitman's actual culpability. But the district court was entitled to find, given counsel's concession, that the loss was above $550,000 and commensurate with a 14-level enhancement.[1]

Neither did the district court clearly err in finding that Kreitman's offenses involved ten or more victims. As Kreitman conceded at the hearing, there were "about 12" insurance companies affected by Kreitman's billings. Although Kreitman later maintained that the government failed to prove more than 8 insurance entities were the victims of Kreitman's fraudulent insurance claims, he

---

[1] The government argues that Kreitman cannot challenge the district court's calculated loss amount of $795,945.51 because he invited the error by agreeing at resentencing that the actual loss amount was around $795,000. However, the record is clear counsel was referring to the total potential loss amount—not how much Kreitman should be held liable for. As a result, the doctrine of invited error does not bar him from making these arguments on appeal.

has presented no argument on appeal that persuades us the district court's finding was clearly erroneous.[2]

Even assuming that only insurance claims filed by Kreitman's patients after August 28, 2010 may be counted,[3] the record reflects there were thirteen insurance companies that made payments on or after that date. Kreitman nonetheless argues there was not enough evidence to find more than ten victims because some of these payments involved only one exam as opposed to a pattern of repeated visits, which could be a sign that the victim was legitimately injured. But again, Kreitman admitted at the resentencing hearing that these single examinations were "borderline" cases and should be omitted under a "conservative" estimate.

Beyond Kreitman's admission, there was testimony that single payments would have been consistent with the fraud scheme because the government introduced only bills attributable to Kreitman—not those bills attributable to his co-conspirators or anyone else. In other words, a "patient" could have scheduled several fake therapy treatments and billed them separately through a co-conspirator, leaving Kreitman responsible for billing a fake x-ray and nothing else.

---

[2] The government also argues Kreitman invited error on the number of victims involved. However, because Kreitman did dispute the number of victims during the resentencing hearing, we will not apply the invited error doctrine to bar consideration of the merits of his claim.

[3] Kreitman argued during resentencing that August 28, 2010, the day the indictment says Kreitman fraudulently mailed an insurance claim, should serve as the start date for all loss calculations.

The district court was entitled to credit that testimony.  The court therefore did not clearly err in finding that the government met its burden of proving by a preponderance of the evidence that more than ten victims were involved.  See United States v. Castaneda–Pozo, 877 F.3d 1249, 1251 (11th Cir. 2017) (per curiam) ("We will not reverse a district court's factual finding unless we are left with a definite and firm conviction that a mistake has been committed." (quotation marks omitted)).

As for the restitution order, it appears the district court recognized that some of the billing numbers "might be inaccurate" but credited the government's proffered number anyway because the mistakes wouldn't lower the guideline range.  This was improper.  This Court has cautioned that "the amount of loss for restitution purposes will not always equal the amount of loss under the sentencing guidelines" and courts must be careful to narrowly tailor restitution so as not to "provide a windfall for crime victims."  United States v. Bane, 720 F.3d 818, 827 (11th Cir. 2013) (quotation marks omitted).  Kreitman raised several concerns during resentencing about how the government calculated loss.  The most serious of these was the government's decision to include billing for a time period that may have predated Kreitman's employment with the clinic.  If Kreitman is correct about these mistakes, it is doubtful he could be made to pay the restitution amount based on them, even if his guideline range remained the same.  See United States

7

v. Dickerson, 370 F.3d 1330, 1341 (11th Cir. 2004) ("[A] criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction.").

The district court did not meaningfully engage with Kreitman's arguments about the loss amount once it determined the guideline range would remain unchanged. We therefore vacate the restitution order and remand for the district court to reconsider all the evidence. If Kreitman wants to pursue his argument that some amount of money should be deducted from the restitution order because he actually treated injured patients, he must present some evidence about what that amount should be. See Bane, 720 F.3d at 829 n.10 ("The defendant bears the burden to prove the value of any medically necessary goods or services he provided that he claims should not be included in the restitution amount.").

## IV.

Kreitman also argues the district court erred by failing to explain why it did not vary downwards from the guideline range. This argument fails to persuade.[4]

"It is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account." United

---

[4] We do not address whether our review of this issue should be for plain error, as the government argues, or abuse of discretion, as Kreitman contends. Kreitman's procedural challenge fails regardless of the standard of review.

States v. Irey, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc) (quotation marks omitted).  As long as the record demonstrates that the district court "listened to the evidence and arguments and was aware of the various factors the defendant put forward for a lesser sentence," the court has adequately explained its sentence.  Id. This district judge listened to Kreitman's statement at resentencing that he had completed more than a thousand credit hours of programming while incarcerated and actively taught other inmates as well.  The court also heard Kreitman's arguments regarding his mother's poor health.  The court chose nonetheless to adhere to the guideline range, determining that a sentence of 84 months was appropriate and sufficient under § 3553.  This was no abuse of discretion.  It was a reasoned consideration of the evidence that we are not at liberty to disturb on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

9